**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                                                        Case No.  6:07-cr-221-Orl-31KRS

**ROBERT D. POWERS**

---

**ORDER**

This matter comes before the Court on Defendant's Amended Motion to Dismiss the Indictment (Doc. 37) and the Government's Response thereto (Doc. 30). Oral argument was held on April 14, 2008.

**I. The History of the Adam Walsh Act**

It is beyond question that sexual victimization, particularly of children, is a major problem in this country. As a result of the significant media attention this problem has received in recent decades, the horrific crimes suffered by children such as Jacob Wetterling, Adam Walsh, Megan Kanka, and Polly Klaas, weigh heavily on America's collective conscience.

In 1994, Congress passed the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("the Wetterling Act") to promote the adoption of sex offender registration laws by all states. *See* Karen S. Schuller, Article, *North Carolina v. Bryant: Paving the Way For a Comprehensive National Sex Offender Registry*, 30 N.C. Cent. L. Rev. 75, 77 (2007). In 1996 the Wetterling Act was amended by Megan's Law, which made the receipt of federal funding for state

law enforcement dependent upon the creation of sex offender registration programs. *See id*. Every state had enacted some variation of Megan's Law by 1997. *See Smith v. Doe*, 583 U.S. 84, 90 (2003).

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 ("the Adam Walsh Act"), which included the Sex Offender Registration and Notification Act ("SORNA"). The Adam Walsh Act is applicable to each state, the District of Columbia, Native American tribal territory, and other United States territories. Each jurisdiction is required to substantially implement the requirements of SORNA by July 27, 2009, or risk a reduction in federal grants. *See* 42 U.S.C. §§ 16294(a)(1) and 16925(a) (2007). In addition to creating a national registry, SORNA imposes registration requirements on individuals who fall under SORNA's definition of a "sex offender" and includes criminal penalties for those who fail to register. SORNA provides, *inter alia*, that a sex offender convicted under a state statute who fails to register or fails to verify his or her registration and also engages in interstate travel can be prosecuted and is subject to a sentence of up to ten years' imprisonment. 18 U.S.C. § 2250(a) (2007).

**II. Factual Background**

Defendant Robert Powers is a 43 year-old man with an IQ of 68 and a second-grade reading level. In 1995 he was convicted under South Carolina law of "Assault to Commit Sex Crimes". (Doc. 6 at1). In compliance with South Carolina law, Mr. Powers registered as a sex offender on November 13, 1995. Mr. Powers moved to Florida in 2007 to live with his mother in Orlando. He failed to register as a sex offender in Florida, as required by Florida Statute § 943.0435(2). On December 4, 2007, Mr. Powers was arrested, while working in the state of Washington, and charged with a violation of SORNA for failing to register in Florida. Mr. Powers then filed the instant Motion to Dismiss, challenging the constitutionality of 18 U.S.C. § 2250(a).

**III. Legal Analysis**

Defendant is charged with violating 18 U.S.C. § 2250(a) ("§ 2250(a)"), which provides that

> Whoever--
> (1) is required to register under [SORNA];
> (2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a) (2007).

SORNA contains, *inter alia*, the following registration requirements:

> (a) In general. A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
>
> . . . .
>
> (c) Keeping the registration current. A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

42 U.S.C. § 16913 (2007).[1]

---

[1] Under SORNA, a "sex offender" is "an individual who was convicted of a sex offense." 42 U.S.C. § 16911(1) (2007). SORNA goes on to define "sex offense" as follows:

(A)   Generally. Except as limited by subparagraph (B) or (C), the term "sex offense"

Defendant argues, *inter alia*, that § 2250(a) is unconstitutional because it is beyond the scope of Congress' power pursuant to the Commerce Clause of the United States Constitution. (Doc. 24 at 8). Specifically, Defendant argues that the registration requirements of SORNA, which are incorporated into § 2250(a)(1), are unconstitutional because "Congress lacks the authority to require individuals convicted of purely local offenses to register as state sex offenders." (Doc. 24 at 8). Furthermore, Defendant argues that § 2250(a)(2)(B) provides an insufficient nexus to interstate commerce to bring this statute within the realm of Congress' powers under the Commerce Clause.

The United States Supreme Court has "identified three general categories of regulation in which Congress is authorized to engage under its commerce power. First, Congress can regulate the channels of interstate commerce. Second, Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce. Third,

---

means –
        (I)    a criminal offense that has an element involving a sexual act or sexual contact with another;
        (ii)   a criminal offense that is a specified offense against a minor;
        (iii)  a Federal offense (including an offense prosecuted under section 1152 or 1153 of title 18, United States Code) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of title 18, United States Code;
        (iv)  a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(I) of Public Law 105-119 (10 U.S.C. 951 note); or
        (v) an attempt or conspiracy to commit an offense described in clauses (I) through (iv).
(B)    Foreign convictions. A foreign conviction is not a sex offense for the purposes of this title if it was not obtained with sufficient safeguards for fundamental fairness and due process for the accused under guidelines or regulations established under section 112.
(C)    Offenses involving consensual sexual conduct. An offense involving consensual sexual conduct is not a sex offense for the purposes of this title if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

42 U.S.C. § 16911(5) (2007).

Congress has the power to regulate activities that substantially affect interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005)(internal citations omitted).

Here, we are clearly not dealing with the regulation of channels or instrumentalities of commerce. Nor are we dealing with the regulation of persons or things in interstate commerce[2]. This is not a case where the interstate travel is intended to further the crime itself,[3] such that a case by case determination can be made as to whether there is a sufficient nexus between the crime and interstate commerce. *See United States v. Lopez*, 514 U.S. 549, 561 (1995). Indeed, the statute in question here makes no effort to regulate the interstate movement of persons who are sex offenders. Those persons are permitted to travel freely throughout the country without consequence, so long as they remain registered in the state in which they reside, work and/or go to school. Thus, to withstand scrutiny under the Commerce Clause, this statute must regulate activities that substantially affect interstate commerce.

Both parties agree that the relevant line of cases begins with *United States v. Lopez*, *supra*, in which the Supreme Court held that "the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A) [("§ 922(q)")], which made it a federal crime to knowingly possess a firearm in a

---

[2]*But see United States v. Beasley,* 2007 U.S. Dist. LEXIS 85793, *29 (N.D. Ga. October 10, 2007) ("The statute derives its authority from the second prong of *Lopez* – the ability to regulate persons or things in interstate commerce.").

[3]*See, e.g.,* The Mann Act, 18 U.S.C. §§ 2421, *et seq.* (criminalizing, *inter alia*, the knowing transportation of any individual in interstate commerce with the intent that such individual engage in prostitution); 18 U.S.C. § 1201 (criminalizing, *inter alia*, kidnaping when the offender travels in interstate commerce while committing or in furtherance of the commission of the offense); 18 U.S.C. § 228 (criminalizing failure to pay child support obligations when the debtor travels in interstate or foreign commerce with the intent to evade a support obligation).

school zone, exceeded Congress' authority under the Commerce Clause." *United States v. Morrison*, 529 U.S. 598, 609 (2000). There were four significant considerations supporting that decision.

First was the fact that "§ 922(q) was a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Id.* at 610. Second, "the statute contained no express jurisdictional element which might limit its reach to a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce." *Id.* at 611. Third, "neither § 922(q) nor its legislative history contains express congressional findings regarding the effects upon interstate commerce of gun possession in a school zone." *Id.* at 612. Finally, the Court rejected the "costs of crime" and "national productivity" arguments and "found that the link between gun possession and a substantial effect on interstate commerce was too attenuated." *Id.*

In *United States v. Morrison*, the Supreme Court held that the Commerce Clause did not provide Congress with the power to enact 42 U.S.C. § 13981 ("§ 13981"), which provided a federal civil remedy for victims of gender-motivated violence. *See Morrison,* 529 U.S. at 602-03, 619. Just like the statute at issue in *Lopez*, the Court found that § 13981 did not regulate economic activity and did not contain a "jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." *Id.* at 613. The Court did note that § 13981 was supported by numerous Congressional findings. However, those findings relied on the same "costs of crime" and "national productivity" arguments that the Court found wanting in *Lopez*. *Morrison*, 529 U.S. at 614. Ultimately, the Court rejected "the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 617.

Like the statutes at issue in *Lopez* and *Morisson*, SORNA has nothing to do with commerce or any form of economic enterprise. Activities held to affect interstate commerce have been uniformly economic in character, or had some effect on the national market. *Morrison,* 529 U.S. at 611 ("*Lopez*'s review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity's substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor."). Like the statute found to be unconstitutional in *Lopez*, SORNA

> is a criminal statute that by its terms has nothing to do with "commerce" or any sort of economic enterprise, however broadly one might define those terms. [The statute] is not an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated. It cannot, therefore, be sustained under our cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce.

*Lopez*, 514 U.S. at 561.

Unlike the statutes at issue in *Lopez* and *Morrison*, § 2250(a) does contain a "jurisdictional element" which purports to establish a link between the failure to register as a sex offender and interstate commerce. The government contends that this language lends support to the argument that § 2250(a) is sufficiently tied to interstate commerce. Upon close examination, however, it becomes apparent that this supposed link is superficial and insufficient to support a finding of substantial affect on interstate commerce.

The Commerce Clause, and the case law interpreting its limits, require more than statutory "lip service" to interstate commerce.[4] In *Morrison*, the Supreme Court referred to the need for a

---

[4] SORNA's legislative history does not include Congressional findings as to the effect upon interstate commerce – if any – of sex offenders' failure to register in their states of residence.

jurisdictional element that would (a) limit the statute's reach to conduct which has an *"explicit connection with or effect on interstate commerce,"* id. at 611 (emphasis added), or (b) establish that the statute is in "pursuance of Congress' power to regulate interstate commerce," *id*. at 613.  The language of § 2250(a)(2)(B) accomplishes neither of those things.  As noted above, the statute does not become applicable to an individual until after that person has completed his or her interstate travel.  And it applies to persons who have engaged in interstate travel regardless of how legitimate their reasons for such travel may have been.  The mere fact that the individual has, at some point, traveled in interstate commerce does not establish that his or her subsequent failure to register "substantially affects interstate commerce."  Simply put, there is no nexus between the crime (failure to register) and the interstate travel.[5]

Furthermore, it is clear that Congress did not believe that mere travel by sex offenders was not an ill that requited its attention, as the statute does not require sex offenders to notify authorities before they travel, or even to register in every state they visit.  The Government argues, in essence, that the outcome in *Lopez* would have been different if the statute at issue had prohibited possession of a gun in a school zone by someone who, in the past, had traveled in interstate commerce – even if that travel was unrelated to the gun possession.  Clearly, such a provision would not have eliminated the constitutional infirmity of § 922(q).

The Government also argues that, like the statute upheld in *United States v. Reynard*, § 2250(a) was "enacted to help  states address problems that defy a local solution," which is "an

---

[5]At oral argument, when presented with a hypothetical situation by this Court, the Government conceded that a state sex offender convicted in Florida, who resided in Florida and failed to register here would be violating only state law – until he traveled to Georgia for the weekend, at which point his failure to register in Florida would become a federal crime under § 2250(a).

appropriate exercise of Congress' Commerce Clause power." (Doc. 30 at 13) (*citing Reynard*, 473 F.3d 1008, 1023-24 (9th Cir. 2007)). The statute at issue in *Reynard* was the DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. § 14135a ("the DNA Act"), which authorized the collection of DNA samples from individuals convicted of <u>federal crimes</u>. Thus, the DNA Act accomplished something states did not have the power to do and was distinctly national in character. *Reynard*, 473 F.3d at 1023. The statute at issue here, however, does not address such problems. Criminal enforcement of sex offender registration requirements is a matter which each state may address as it deems appropriate; indeed all fifty states have done so. It has not been shown that the states need the federal government's help in this regard.

**IV. Conclusion**

As the Government notes, the Adam Walsh Act was enacted with a commendable goal – to protect the public from sex offenders. (Doc. 30 at 13-14). However, a worthy cause is not enough to transform a state concern (sex offender registration) into a federal crime. If an individual's mere unrelated travel in interstate commerce is sufficient to establish a Commerce Clause nexus with purely local conduct, then virtually all criminal activity would be subject to the power of the federal government. Surely our founding fathers did not contemplate such a broad view of federalism. Accordingly, the Court finds that the adoption of the statute under which Defendant is charged violates Congress' power under the Commerce Clause and is, therefore, unconstitutional. Accordingly, it is

**ORDERED** that the Amended Motion to Dismiss the Indictment (Doc. 37) is **GRANTED**. Mr. Powers shall be released from the custody of the Bureau of Prisons and the Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on April 18, 2008.

                                                                            _____
                                                                            GREGORY A. PRESNELL
                                                                            UNITED STATES DISTRICT JUDGE

Copies furnished to:
United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Robert D. Powers